## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**CANDACE M. OLIVERI,**

        **Plaintiff,**                    **Case No. 2:18-cv-11631**
                                                **Magistrate Judge Norah McCann King**

    **v.**

**ANDREW SAUL,**
**Commissioner of Social Security,**

        **Defendant.**

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Candace M. Oliveri for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*[1] Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

### I.    PROCEDURAL HISTORY

On April 16, 2014, Plaintiff filed an application for benefits, alleging that she has been

---

[1] Plaintiff previously applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.*, but her application was denied because she failed to meet the  income requirements for eligibility. R. 84–93, 175–79. Plaintiff does not appeal that denial in this Court. *Complaint*, ECF No. 1 (appealing only the denial of the application for Disability Insurance Benefits).

[2] Andrew Saul, the current Commissioner of Social Security, is substituted as Defendant in his official capacity.

disabled since December 21, 2007. R. 15, 66, 165−66. Plaintiff's application was denied

initially. R. 78−81.[3] Plaintiff thereafter sought a *de novo* hearing before an administrative law

judge. R. 82−83. Administrative Law Judge Scott Tirrell ("ALJ") held a hearing on April 14,

2017, at which Plaintiff, who was represented by counsel, appeared and testified, as did a

vocational expert. R. 29−65. In a decision dated August 28, 2017, the ALJ concluded that

Plaintiff was not disabled within the meaning of the Social Security Act at any time from

December 21, 2007, the alleged disability onset date, through June 30, 2012, the date that

Plaintiff was last insured. R. 15−24. That decision became the final decision of the

Commissioner of Social Security when the Appeals Council declined review on May 14, 2018.

R. 1−6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On July 30,

2018, Plaintiff consented to disposition of the matter by a United States Magistrate Judge

pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 4.[4]

On March 12, 2020, the case was reassigned to the undersigned. ECF No. 21. The matter is now

ripe for disposition.

---

[3] Plaintiff represents that her application for DIB was denied on reconsideration, but her citation to the record in support of that representation refers to the denial of her application for SSI. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 1 (citing, *inter alia*, R. 84−93); *see also* R. 15 (reflecting the ALJ's summary of the procedural history if the administrative proceedings without reference to a reconsideration request or decision). The Commissioner does not raise the apparent failure to pursue reconsideration as a defense. *See generally Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 19. As set forth above in the summary of procedural history, the Court has jurisdiction to review the Commissioner's final decision. *See* 42 U.S.C. § 405(g); *cf. Smith v. Berryhill*, 139 S.Ct. 1765, 1775−77 (2019).

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

II.     **LEGAL STANDARD**

A.     **Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by an ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews an ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Court of Appeals for the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of

the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication

of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter*, 650 F.2d at 482.  Absent such articulation, the Court

"cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As

the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the
> weight [s/]he has given to obviously probative exhibits, to say that [the] decision is
> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can

enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award

benefits should be made only when the administrative record of the case has been fully

developed and when substantial evidence on the record as a whole indicates that the claimant is

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of

Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2012, and she was 28 years old on that date. R. 17, 23. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 21, 2007, through her date last insured of June 30, 2012. R. 17.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: systemic lupus erythematosus; inflammatory arthritis; other disorders of the urinary tract; bilateral rotator cuff tendonitis; and right tennis elbow. *Id.* The ALJ also found that the following diagnosed impairments were not severe impairments: asthmatic bronchitis, gestational diabetes,

vaginal bleeding, occipital neuralgia/headaches, sicca complex (Sjorgen syndrome), and fibromyalgia. R. 17–18.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18–19.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R.19–23.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 981,150 jobs as an information clerk; approximately 826,650 jobs as a fund raiser; approximately 190,170 jobs as a survey worker —existed in the  national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 24. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from December 21, 2007, her alleged onset date, through June 30, 2012, the date last insured. R. 24.

Plaintiff disagrees with the ALJ's findings at steps two, four, and five as well as the ALJ's consideration of her subjective complaints; she asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum,* ECF No. 18; *Plaintiff's Reply*, ECF No. 20. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 19.

## IV.    DISCUSSION

### A.    Step two

Plaintiff challenges the ALJ's determination at step two of the sequential evaluation that her asthmatic bronchitis, occipital neuralgia/headaches, sicca complex, and fibromyalgia were not severe. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 15–24; *Plaintiff' Reply*, ECF No. 20, 1–5. Plaintiff's arguments are not well taken.

At step two, an ALJ determines whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted). "So long as the ALJ rules in Plaintiff's favor by finding that any single impairment meets the severity threshold required at step two, any error the ALJ made in this determination was harmless." *Auriemma v. Colvin*, No. 13-5947, 2015 WL 5097902, at *6 (D.N.J. Aug. 31, 2015) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); *see also Hicks v. Colvin*, No. 2:15-cv-07221, 2016 WL 8674251, at *8 (D.N.J. Oct. 14, 2016) ("Even if the ALJ had in fact erred with respect to one of the impairments that she found to be non-severe, such error would be harmless since she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding.").

Here, the ALJ noted that Plaintiff was first diagnosed with asthmatic bronchitis during a December 17, 2012, emergency room visit, which was more than five months after her date last

insured of June 30, 2012. R. 17; *see also Plaintiff's Memorandum of Law*, ECF No. 18, pp. 15–16 (citing evidence dated after date last insured). The ALJ therefore correctly found that the evidence failed to establish Plaintiff's asthmatic bronchitis as a severe impairment on or prior to her date last insured. R. 17; *Cf. Krzywoszyja v. Comm'r of Soc. Sec.*, 188 F. App'x 152, 155 (3d Cir. 2006) (finding that substantial evidence supported the ALJ's decision that the medical records did not indicate a diagnosis of any impairments that caused the plaintiff's alleged symptoms during the relevant period).

The ALJ went on to find that Plaintiff's occipital neuralgia/headaches were not severe because she did not have symptoms sufficient to meet the twelve-month duration requirement during the relevant period, R. 17, and that Plaintiff's sicca complex was not severe because there was no evidence that the condition significantly limited her ability to work, R. 18. The Court finds no error with these findings. *See* 42 U.S.C. § 423(d)(1)(A) (defining "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months); *Bagnato v. Comm'r of Soc. Sec.*, 240 F. App'x 978, 980 (3d Cir. 2007) (finding that substantial evidence supported "the ALJ's determination that [the claimant] did not satisfy his burden of proving the durational requirement of 42 U.S.C. §§ 423(d)(1)(A)"); *cf. McDaniels v. Comm'r of Soc. Sec.*, 136 F. App'x 485, 488 (3d Cir. 2005) (affirming decision denying benefits where, *inter alia*, "a reasonable fact finder could easily find that [the claimant's condition] would not limit her for more than twelve months").

The ALJ also found that Plaintiff failed to establish that she suffered the severe medically determinable impairment of fibromyalgia. R. 18. Substantial evidence supports the ALJ's finding

in this regard. Fibromyalgia "is a complex medical condition characterized primarily by

widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at

least 3 months." SSR 12-2p. Under SSR 12-2p, a claimant can establish fibromyalgia as a severe

medically determinable impairment by presenting "appropriate medical evidence" that satisfies

one of the two sets of criteria for the diagnosis, based on criteria established by the American

College of Rheumatology ("ACR"): the 1990 ACR Criteria for the Classification of

Fibromyalgia (the "1990 Criteria"),[5] or the 2010 ACR Preliminary Diagnostic Criteria (the

"2010 Criteria").[6] *Id*. "Appropriate medical evidence" includes a physician's diagnosis along

with documentation that the physician has "reviewed the person's medical history and conducted

a physical exam." *Id*. "Conclusory statements by a medical provider that a patient suffers from

---

[5] Under the 1990 Criteria, an ALJ may find that a person suffers from fibromyalgia if that person
has all three of the following: (1) a history of widespread pain in all quadrants of the body that
has persisted for at least three months; (2) at least eleven positive tender points bilaterally both
above and below the waist on physical examination; and (3) *"[e]vidence that other disorders
that could cause the symptoms or signs were excluded*. Therefore, it is common in cases
involving [fibromyalgia] to find evidence of examinations and testing that rule out other
disorders that could account for the person's symptoms and signs." *Id*. (emphasis added).
[6] Under the 2010 Criteria, an ALJ may find that a person suffers from fibromyalgia if that person
has all three of the following: (1) a history of widespread pain; (2) "[r]epeated manifestations of
six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially
manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed,
depression, anxiety disorder, or irritable bowel syndrome"; and (3) *"[e]vidence that other
disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring
condition were excluded*[.]" *Id*. (emphasis added). Symptoms or signs include "somatic
symptoms," including the following: muscle pain, irritable bowel syndrome, fatigue or tiredness,
thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen,
numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen,
nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing,
Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss
of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun
sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms. *Id*.
Some co-occurring conditions may include irritable bowel syndrome, depression, anxiety
disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis,
temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg
syndrome. *Id*.

fibromyalgia are insufficient to meet a claimant's burden at step two for establishing a medically determinable impairment." *Fox v. Comm'r of Soc. Sec.*, No. 1:19-CV-04879, 2020 WL 1888251, at *5 (D.N.J. Apr. 16, 2020).

Here, the ALJ concluded that the evidence failed to establish that Plaintiff's diagnosed fibromyalgia is a medically determinable impairment. R. 18. Citing the 1990 Criteria and the 2010 Criteria, the ALJ specifically found, *inter alia*, that "there was no indication of an effort to rule out other possible causes for the claimant's complaints." *Id.* Notably, Plaintiff does not cite to any evidence that any physician excluded other conditions that could cause Plaintiff's symptoms. *See Plaintiff's Memorandum of Law*, ECF No. 18, pp. 18–21; *Plaintiff's Reply*, ECF No. 20, p. 3. Based on this record, substantial evidence supports the ALJ's conclusion at step two of the sequential evaluation that Plaintiff's fibromyalgia is not a medically determinable impairment. *See* SSR 12-2; *Friedman v. Berryhill*, No. CV 18-9446, 2019 WL 1418132, at *9–10 (D.N.J. Mar. 29, 2019) (finding that the ALJ's conclusion that the claimant failed to satisfy all the criteria under SSR 12-2p, because, *inter alia*, "the medical record failed to include documentation which excluded 'other disorders that cause similar symptoms to fibromyalgia'") (citations omitted) (remanding on other grounds); *Haruch v. Berryhill*, No. CV 17-0773, 2018 WL 3785406, at *3 (E.D. Pa. Aug. 8, 2018) (agreeing with the ALJ that the claimant's fibromyalgia was not a medically determinable impairment where, *inter alia*, "Plaintiff presented no evidence to preclude the possibility that her symptoms were caused by another disorder").

However, even if the ALJ erred by not finding fibromyalgia or any of the above conditions to be severe impairments, that error is harmless. Here, the ALJ decided in Plaintiff's favor at step two, finding that her systemic lupus erythematosus; inflammatory arthritis; other disorders of the urinary tract; bilateral rotator cuff tendonitis; and right tennis elbow are severe

impairments. R. 17. The ALJ went on to evaluate Plaintiff's impairments through the remainder of the five-step sequential evaluation. R. 19–23. Accordingly, even if the ALJ erred by not finding other severe impairments, any such error at step two is harmless based on this record. *See Salles*, 229 F. App'x at 145 n.2; *Hicks*, 2016 WL 8674251, at *8; *Auriemma*, 2015 WL 5097902, at *6.

### B.   Subjective complaints

Plaintiff also challenges the ALJ's consideration of her subjective complaints, arguing that the ALJ failed to properly evaluate her complaints of pain, which she contends are supported by the medical record. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 21–24; *Plaintiff's Reply*, ECF No. 20, p. 6. This Court disagrees.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or

symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In this evaluation, an ALJ considers objective medical evidence as well as other evidence relevant to a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms).

Finally, "[t]he ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[7]

Here, the ALJ followed this two-step evaluation process.  The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's "statements concerning the intensity, persistence and limiting

---

[7]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility."  SSR 16-3p.  However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 21. The ALJ also detailed years of record evidence, as follows: no evidence of renal insufficiency in light of Plaintiff's normal creatine levels; records from her primary care physician, Marco Patrick G. Holgato, D.O., that "did not focus on her history or complaints related to fibromyalgia or lupus from June 2011, when she commenced treatment with this provider to June 30, 2012, her date last insured;" no evidence of complaints of joint pain until April 12, 2012, when Plaintiff's primary care physician referred her to Anil Kapoor, M.D, a rheumatologist, even though Plaintiff testified that she stopped working in 2007 due to fatigue, limitations in standing and sitting, and an inability to control her hands due to pain; Dr. Kapoor's notation on April 12, 2012, that Plaintiff's "current symptoms reportedly started spontaneously several months ago;" and Plaintiff's reports of a significant reduction in her symptoms with pharmacological therapy on or prior to her date last insured. R. 21–22 (emphasis in the original).[8]

Accordingly, this Court finds that the ALJ has sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record. His evaluation of Plaintiff's subjective complaints are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently

---

[8] As discussed in more detail below, the ALJ nevertheless considered Plaintiff's complaints of fatigue and joint pain in finding that Plaintiff had the RFC for a limited range of light work. R. 22.

evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"); *Campbell v. Berryhill*, No. CV 17-1714, 2018 WL 3575255, at *11 (E.D. Pa. July 25, 2018) ("'A diagnosis of fibromyalgia does not automatically render a person unable to perform jobs that exist in significant numbers in the national economy.'") (quoting *Edelman v. Astrue*, 2012 WL 1605102, at *4 (E.D. Pa. May 8, 2012)).

The ALJ's assessment of Plaintiff's subjective complaints therefore cannot serve as a basis for remand of this action. *Id.*

### C.      Step Four – RFC

Plaintiff also argues that the ALJ's RFC determination is not supported by substantial evidence. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 24–26; *Plaintiff's Reply*, ECF No. 20, pp. 4–5. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, an ALJ is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to exclude from the RFC "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported

reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform light work with certain additional limitations:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she could occasionally climb ramps and stairs; could never climb ladders, ropes or scaffolds; could frequently balance; could occasionally stoop, kneel, and crouch; could never crawl; could frequently use her upper extremities bilaterally for reaching in all directions, and frequently use her hands bilaterally for grasping, fingering and feeling; she would have needed to stand and stretch at the workstation for 1-5 minutes after 30 minutes of sitting, and to sit for 1-5 minutes at the workstation after 30 minutes of standing or working, while continuing work tasks; due to pain and other symptoms, she would have been off task 10% of the workday, and would have been absent 1 day per month on average.

R. 19. In making this determination, the ALJ detailed years of record evidence, as noted above, R. 21−22, and expressly considered Plaintiff's fatigue and joint pain, as well as the clinical findings of Dr. Kapoor and Dr. Holgato prior to her date last insured, in finding that Plaintiff could perform the demands of light exertion with additional postural and manipulative limitations; a stand and stretch option due to her complaints of joint pain and stiffness; and being off task no more than 10% of the workday with no more than one absence from work per month. R. 19, 22.  The record unquestionably contains substantial evidence to support this RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff contends that this RFC determination lacks substantial support because it fails to include all the physical limitations identified by Dr. Kapoor in his medical source statement dated April 7, 2017, particularly this treating physician's restrictions on sitting, standing, and

walking. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 25−26 (citing R. 572−78); *Plaintiff's Reply*, ECF No. 20, p. 5 (same). Plaintiff's argument is not well taken.

"'A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization;

18

and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6); *see also* SSR 96-2p.[9]

Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted). Finally, "'[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity[.]'" *Chandler*, 667 F. 3d at 361 (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011)).

Here, the ALJ gave "little weight" to Dr. Kapoor's medical source statement dated April 7, 2017, reasoning as follows:

> Additionally, in an April 7, 2017 medical source statement, Dr. Kapoor opined that the claimant could sit four hours; stand and walk for a combined total of two hours in an eight hour day; that she needed to elevate her legs; that she would be absent more than three times per month; and was limited to occasional repetitive use of the arms for reaching and the hands and fingers. The practitioner opined that the

---

[9] The Social Security Administration amended the regulations addressing the evaluation of medical evidence, *see*, *e.g.*, 20 C.F.R. § 404.1527 (providing that the rules in this section apply only to claims filed before March 27, 2017), and SSR 96-2p was rescinded. Plaintiff filed her claim on April 16, 2014.

19

claimant's limitations were present since April 4, 2012 (Exhibit 13F). I give this April, 2017 opinion, rendered years after the claimant's date last insured, little weight, as Dr. Kapoor's own treatment records, and the records of the claimant's primary care physician, do not support such limitations for a 12-month continuous from that time through her date last insured. There is no indication of the need for the claimant to elevate her legs on or prior to the date last insured or such extreme limitation on the use of the claimant's arms or hands. While an April 12, 2012 examination revealed that the claimant had diminished handgrip and tenderness in the bilateral hands, as well as limited shoulder abduction, a May 3, 2012 follow up note indicated that the claimant responded "very significantly" to treatment (Exhibits 10F, pp. 23, 26). Although after the claimant's date last insured, an August 13, 2013 progress note of Dr. Holgato noted that the claimant had no focal neurologic deficits or motor deficits of the upper and lower extremities (Exhibit 12F, p. 22). Furthermore, the exertional limitations of Dr. Kapoor were not supported by clinical or diagnostic evidence to the extent opined prior to the date last insured.

R. 22−23. Notably, Plaintiff does not challenge this treatment of Dr. Kapoor's medical source statement, *see Plaintiff's Memorandum of Law*, ECF No. 18, pp. 25−26; *Plaintiff's Reply*, ECF No. 20, p. 5, which the Court finds is supported by substantial evidence. *See* 20 C.F.R. § 404.1527(c)(3), (4); *Chandler*, 667 F. 3d at 361. Because an ALJ need include in the RFC only "credibly established" limitations, *i.e.*, limitations "that are medically supported and otherwise uncontroverted in the record[,]" *Rutherford*, 399 F.3d at 554, the ALJ therefore did not err in excluding from the RFC the functional limitations articulated in Dr. Kapoor's April 7, 2017, medical source statement. *See id*.

For all these reasons, this Court concludes that the RFC found by the ALJ enjoys substantial support in the record.

### D.    Step Five

Finally, Plaintiff challenges the ALJ's step five determination, arguing that the hypothetical question posed to the vocational expert, which included the ALJ's RFC determination, failed to include Plaintiff's claimed postural limitations. *Plaintiff's Memorandum*

20

*of Law*, ECF No. 18, pp 26−27 (citing R. 62−63); *Plaintiff's Reply*, ECF No. 20, p. 5. Plaintiff's argument is not well taken.

"[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work[.]" 20 C.F.R. § 404.1560(b)(2). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id*. (citations and internal quotation marks omitted). Finally, a "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218.

Here, the ALJ's first hypothetical question posed to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 19, 60−61. The vocational expert responded that the jobs of information clerk, fund raiser, and survey worker

21

could be performed by such an individual. R. 61; *see also* R. 24. For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218. Plaintiff nevertheless points to the third hypothetical posed to the vocational expert, which assumed a claimant who would be limited to sedentary exertion with additional limitations. R. 62−63. The vocational expert responded that such an individual would not be able to perform the jobs previously identified. R. 63. However, as previously noted, the first hypothetical sufficiently included Plaintiff's credibly established limitations and substantial evidence did not support the more extreme limitations contained in the third hypothetical. Accordingly, to the extent that Plaintiff's criticism of the first hypothetical posed to the vocational expert is that all her alleged impairments were not addressed, this criticism boils down to an attack on the RFC determination itself. *See Rutherford*, 399 F.3d at 554 n.8. This Court has already rejected that attack for the reasons previously discussed.

In short, the Court finds that the Commissioner has carried his burden at step five of the sequential evaluation and concludes that substantial evidence supports his determination in this regard.

## V.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  September 11, 2020                        *s/Norah McCann King*
                                                NORAH McCANN KING
                                                UNITED STATES MAGISTRATE JUDGE

22